VERSO LAW GROUP LLP
SOPHY J. TABANDEH (Cal. Bar No. 287583)
565 Commercial Street, Fourth Floor
San Francisco, California 94111
Telephone:   (415) 534-0495
Facsimile:    (415) 518-5974
Email: sophy.tabandeh@versolaw.com

Attorneys for Plaintiff
HYDRAFACIAL LLC

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HYDRAFACIAL LLC, a California limited liability company,<br><br>                    Plaintiff,<br><br>          v.<br><br>LA PEAU SPA LLC, a California Limited Liability Company,<br><br>                    Defendant. | Case No. <br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION (INJUNCTIVE RELIEF SOUGHT)**<br><br>**JURY TRIAL DEMAND** |

This action is necessary to stop Defendant La Peau Spa LLC ("La Peau") from infringing and trading on Plaintiff Hydrafacial LLC's ("Hydrafacial") valuable trademarks and goodwill. Hydrafacial complains against La Peau as follows:

**JURISDICTION AND VENUE**

1.      Plaintiff Hydrafacial's claims arise under the Trademark Act of 1946 (the Lanham Act). This Court has jurisdiction over such claims pursuant to 28 U.S.C. §§ 1338(a) and 1338(b) (trademark and unfair competition), 28 U.S.C. § 1331 (federal question) and 15 U.S.C. § 1121 (Lanham Act). This Court has supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

2.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because La Peau is registered to do business in this district, maintains a principal address in this district, transacts its business in this district and because events giving rise to the claims asserted arose in this district.

COMPLAINT                                                                                                                      - 1 -
Case No.

**PARTIES**

3.      Hydrafacial is a California limited liability company with its principal place of business at 3600 E. Burnett Street, Long Beach, CA 90815.

4.      La Peau is a California limited liability company at 7550 N Palm Avenue, Suite #201, Fresno, CA 93711.  La Peau offers, promotes, and sells services to customers in this judicial district using Hydrafacial's well-known HYDRAFACIAL® trademarks, without authorization.

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

**Hydrafacial's Business and HYDRAFACIAL Trademarks**

5.      Hydrafacial designs, develops, manufactures, and sells high-quality skin resurfacing and rejuvenation equipment and services, including patented hydradermabrasion equipment and services.  Hydrafacial's award-winning treatment services rejuvenate skin by cleaning and exfoliating the skin surface, extracting debris from pores, and nourishing the skin's surface.  Hydrafacial's high-quality therapeutic serums are used in connection with these treatments to moisturize and protect the skin surface.

6.      Hydrafacial distinguishes and identifies its hydradermabrasion equipment and services, and related products with its HYDRAFACIAL trademarks.  It does business under its "The Hydrafacial Company" and "Hydrafacial" tradenames.

7.      Hydrafacial promotes and sells its HYDRAFACIAL-branded services and products throughout the United States and in California to end users, including dermatologists, plastic surgeons, cosmetic physicians, and aestheticians at medical spas.  These end users provide hydradermabrasion services using authentic Hydrafacial systems and products, including serums, under the HYDRAFACIAL trademarks under license from Hydrafacial.  This allows Hydrafacial to ensure that services provided under its mark are performed with products that meet Hydrafacial's standard for quality and that, accordingly, the treatment itself meets Hydrafacial's quality standard. Spas, dermatology clinics, and other professional providers, as well as their clients, recognize and rely on the HYDRAFACIAL® brand to guarantee high standards and quality.

8.      For many years prior to the events giving rise to this Complaint and continuing to the present, Hydrafacial has spent great amounts of time, money, and effort advertising and promoting its

COMPLAINT                                                                                                                                    - 2 -
Case No.

products and services under its HYDRAFACIAL trademarks.  Since at least 2005, Hydrafacial has extensively and continuously used its HYDRAFACIAL trademarks in connection with its hydradermabrasion systems, products, and services. Through its long, continuous, and exclusive use, investments, and large sales, Hydrafacial has created considerable goodwill and a reputation for high-quality products, systems, and technology.

9.     Hydrafacial treatments offered under its HYDRAFACIAL trademarks have become very well-known in the industry.  Hydrafacial and treatment services offered under its HYDRAFACIAL trademarks have been featured in numerous publications, including *People Magazine*, *Elle Magazine*, *Allure*, *Elle Magazine's Beauty Book*, and *Harper's Bazaar Magazine*, among others.  In 2023, Hydrafacial won "Best Cosmetic Treatment" from the Cosmopolitan Readers' Choice Beauty Awards. In 2025, Hydrafacial won "Best Hydrating Facial" from the NewBeauty Beauty Awards, for the fourth year.

10.     In 2025, approximately five million HYDRAFACIAL treatments were performed globally, equating to 1.5 treatments a second. Hydrafacial's success is backed by industry-leading consumer trust and satisfaction, ranking as the second most recognized facial treatment in the U.S., and responsible for driving 7% of all new patients to medical spas and aesthetic practices each year.

11.     Hydrafacial owns federal registrations for its HYDRAFACIAL trademarks; all are in full force and effect, valid, protectable, and exclusively owned by Hydrafacial.

12.     Hydrafacial owns, among others, the following United States Registrations for its trademarks. All of these registrations have become incontestable under the provisions of 15 U.S.C. § 1065.

      a.     Registration No. 4,317,059 for HYDRAFACIAL (first use August 12, 2005; registered April 9, 2013);

      b.     Registration No. 4,738,970 for HYDRAFACIAL (first use May 17, 2005; registered May 19, 2015);

      c.     Registration No. 3,341,027 for HYDRAFACIAL MD (first use February 15, 2005; registered May 19, 2015);

      d.     Registration No. 5,012,576 for HYDRAFACIAL MD CTGF (first use

February 6, 2005; registered August 2, 2016); and

e.   Registration No. 6,080,194 for HYDRAFACIAL KERAVIVE (first use January 6, 2020; registered June 16, 2020).

f.   Registration No. 6,030,752 for HYDRAFACIAL KERAVIVE (first use January 6, 2020; registered April 7, 2020).

g.   Registration No. 4,114,466 for VORTEX-FUSION (first use March 17, 2011; registered March 20, 2012)

13.   Hydrafacial's registered trademarks, together with its related common law trademarks, cover many goods and services, including medical spa services; medicated and non-medicated skin care preparations, such as skin lotions, skin nourishers, and skin cleansers; devices to perform microdermabrasion and hydradermabrasion procedures; retail and wholesale store services featuring cosmetic preparations for skin and scalp care; and teaching of beauty skills; amongst others (collectively referred to as "HYDRAFACIAL Marks"). Starting from at least the claimed first-use dates until the present, and during all time periods relevant to Hydrafacial's claims, Hydrafacial continuously has used the HYDRAFACIAL Marks in connection with its registered goods and services, including but not limited to spa services, skin care products, and devices used for skin treatments.

14.   Examples of Hydrafacial's use of its HYDRAFACIAL Marks are attached as **Exhibit A**.

**La Peau's Unauthorized Use of the HYDRAFACIAL Marks and Illegal Acts**

15.   La Peau is a spa, offering a variety of services including facials, injectable treatments, and laser treatments, amongst others.

16.   On March 25, 2022, La Peau purchased an authentic Hydrafacial machine from Hydrafacial and entered into a Purchase and Trademark License Agreement with Hydrafacial. Subsequently, on December 27, 2022, La Peau purchased another authentic Hydrafacial machine and entered into another Purchase and Trademark License Agreement. These two Purchase and Trademark License Agreements are referred to herein as the "License Agreements."

17.   The License Agreements expressly stated that Hydrafacial owned the HYDRAFACIAL

COMPLAINT                                                                                                                   - 4 -
Case No.

Marks. Under the License Agreements, La Peau agreed to use the authentic Hydrafacial machines solely with authentic Hydrafacial serums and authentic Hydrafacial treatment-tips as a condition to being granted limited permission to use the HYDRAFACIAL Marks in connection with its promotion and sale of Hydrafacial services.

18.    On August 19, 2024, Hydrafacial sent a letter to La Peau, warning La Peau that violation of the License Agreement by using serums that are not authentic would result in termination of the License Agreements—requiring  La Peau to cease use of the HYDRAFACIAL Marks.

19.    Due to La Peau's continued use of serums that are not authentic, Hydrafacial terminated the License Agreements on February 5, 2025.

20.    In response, La Peau asked Hydrafacial to reconsider its decision to terminate the License Agreements. After careful consideration, on April 11, 2025, Hydrafacial notified La Peau that it had decided not to reverse its decision to terminate the License Agreements.

21.    Despite termination of the License Agreements, La Peau has continued to use the HYDRAFACIAL Marks to offer and promote services without authorization ("Unauthorized Hydrafacial Designation").  La Peau uses the Unauthorized Hydrafacial Designation in competition with Hydrafacial's authorized licensees.  For example, as recently as August 10, 2026, La Peau's website featured the HYDRAFACIAL Marks in connection with offering its services. A copy of La Peau's website depicting its use of the Unauthorized Hydrafacial Designation as of August 10, 2026, is attached as **Exhibit B**.

22.    Between April 11, 2025, and August 7, 2026, Hydrafacial contacted La Peau several times reminding it of the termination of the License Agreements and requesting that La Peau stop its infringing use of the HYDRAFACIAL Marks. Although La Peau agreed to cease use of the Unofficial Hydrafacial Designation, it has not done so to date. A screenshot from a posting on La Peau's Instagram account recently is attached as **Exhibit C**.

23.     La Peau is not authorized to use the HYDRAFACIAL Marks as its License Agreements were terminated on February 5, 2025.  La Peau's Unauthorized Hydrafacial Designation is identical to Hydrafacial's HYDRAFACIAL Marks.  Likewise, the services that La Peau offers under its Unauthorized Hydrafacial Designation are identical to those that Hydrafacial provides under

COMPLAINT                                                                                          - 5 -
Case No.

its HYDRAFACIAL Marks. La Peau's use of an identical mark on identical services is likely to confuse consumers about the source of La Peau's services and products and/or La Peau's relationship with Hydrafacial.

24.    As a former licensee, La Peau has long been aware of Hydrafacial, its products and services, and its ownership of the HYDRAFACIAL Marks. Given La Peau's actual knowledge of Hydrafacial's ownership and prior use of the HYDRAFACIAL Marks, coupled with La Peau's refusal to stop using the mark despite Hydrafacial's numerous pre-litigation correspondence, Hydrafacial believes that La Peau intends to willfully infringe the HYDRAFACIAL Marks, and pass off its goods and services to misappropriate the goodwill in the HYDRAFACIAL Marks.

25.    La Peau's use of the Unauthorized Hydrafacial Designation in connection with offering treatment services using unauthorized serums and products harms customers who, in reliance on the HYDRAFACIAL Marks, believe they are receiving authentic Hydrafacial treatments.  La Peau's use of the Unauthorized Hydrafacial Designation also deprives Hydrafacial of the right to control its trademarks, its reputation, and the quality of services offered under its brand name.

26.    Hydrafacial is informed and believes that La Peau has provided a large quantity of treatment services to customers under La Peau's Unauthorized Hydrafacial Designation and has obtained and continues to obtain substantial profits from these sales.

27.    La Peau's actions have caused and will cause Hydrafacial irreparable harm for which money damages and other remedies are inadequate.  Unless La Peau is restrained by this Court, it will continue and/or expand its illegal activities and otherwise continue to cause great and irreparable damage and injury to Hydrafacial by, among other things:

      a.    Depriving Hydrafacial of its rights to use and control use of its trademarks;

      b.    Creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the infringing services and products;

      c.    Causing the public falsely to associate Hydrafacial with La Peau and/or its products, or services, or vice versa;

d.      Causing incalculable and irreparable damage to Hydrafacial's goodwill, and eroding the capacity of its HYDRAFACIAL Marks to differentiate Hydrafacial's systems, products, and services from others;

e.      Causing Hydrafacial to lose revenue; and

f.      Causing Hydrafacial to lose sales of its genuine products and services.

28.     Accordingly, in addition to other relief sought, Hydrafacial is entitled to injunctive relief against La Peau, its affiliates, licensees, subsidiaries, and all persons acting in concert with it.

**FIRST CLAIM**

**<u>FEDERAL TRADEMARK INFRINGEMENT</u>**

**(15 U.S.C. § 1114; Lanham Act § 32)**

29.     Hydrafacial realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 28 of this Complaint.

30.     Hydrafacial owns valid trademark registrations in its HYDRAFACIAL Marks, including incontestable U.S. Trademark Registration Nos. 4,317,059 and 4,738,970, amongst others.

31.     Without Hydrafacial's permission, La Peau has used and currently uses, in connection with the sale, offering for sale, distribution, or advertising of its spa and treatment services, marks that infringe upon Hydrafacial's rights in its registered HYDRAFACIAL Marks.

32.     These acts of trademark infringement are likely to cause confusion and mistake among consumers and the public, and to deceive the public into believing that La Peau's products and services originate from, are associated with, sponsored by, or are approved by Hydrafacial, when they are not.

33.     As a former licensee, La Peau is aware of Hydrafacial and its rights in the HYDRAFACIAL Marks—particularly in light of Hydrafacial's pre-litigation correspondence.  Given La Peau's actual knowledge of Hydrafacial's ownership and prior use of the HYDRAFACIAL Marks, and without the consent of Hydrafacial, La Peau willfully violated 15 U.S.C. § 1114.

34.     La Peau's infringement has injured Hydrafacial and damaged Hydrafacial in an amount to be determined at trial.   By its actions, La Peau has irreparably injured Hydrafacial.  Such irreparable injury will continue unless and until La Peau is preliminarily and permanently enjoined by

COMPLAINT                                                                                                    - 7 -
Case No.

this Court from further violation of Hydrafacial's rights, for which Hydrafacial has no adequate remedy at law.

35.    As a direct and proximate result of La Peau's infringing activities, Hydrafacial is entitled to recover La Peau's unlawful profits, Hydrafacial's substantial damages, and costs under 15 U.S.C. § 1117(a).

36.    La Peau's infringement of the HYDRAFACIAL Marks is an exceptional case and is willful and ongoing, entitling Hydrafacial to treble the amount of its damages and La Peau's profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a).

**SECOND CLAIM**

**FEDERAL UNFAIR COMPETITION**

**(False Designation of Origin and False Description)**

**(15 U.S.C. § 1125(a); Lanham Act § 43(a))**

37.    Hydrafacial realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 28 of this Complaint.

38.    La Peau's use of La Peau's Unauthorized Hydrafacial Designation in connection with offering services that overlap with services provided by Hydrafacial constitutes trademark infringement, false designation of origin, false or misleading description of fact, or false or misleading representation of fact—in violation of 15 U.S.C. § 1125(a).  La Peau's conduct is likely to cause, contribute to, or induce others to cause confusion, mistake, or deception by or in the public as to the affiliation, connection, association, origin, sponsorship, or approval of La Peau's products and services to the detriment of Hydrafacial and consumers and in violation of 15 U.S.C. § 1125(a).

39.    The skin treatment services La Peau provides are presented to customers as authentic Hydrafacial services, when in fact, the services are materially different from authentic Hydrafacial services, in part, because La Peau fails to use authorized Hydrafacial serums and treatment-tips. Only Hydrafacial or its licensees have the right to use the HYDRAFACIAL Marks. La Peau is not a licensee and is not otherwise authorized to use the HYDRAFACIAL Marks.

40.    La Peau's use of the Unauthorized Hydrafacial Designation, without Hydrafacial's consent, constitutes false designation of origin, false or misleading description of fact, or false or

COMPLAINT                                                                                                          - 8 -
Case No.

misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of its products and services or commercial activities in violation of 15 U.S.C. 1125(a).

41. As a former licensee, La Peau is well aware of Hydrafacial and its rights in the HYDRAFACIAL Marks. Given La Peau's actual knowledge of Hydrafacial's ownership and prior use of the HYDRAFACIAL Marks, and without the consent of Hydrafacial, La Peau willfully engaged in acts of trademark infringement, false designation of origin, passing off, and unfair competition.

42. As a direct and proximate result of La Peau's infringing activities, Hydrafacial is entitled to recover La Peau's unlawful profits, Hydrafacial's substantial damages, and costs, under 15 U.S.C. § 1117(a).

43. La Peau's infringement of the HYDRAFACIAL Marks is an exceptional case and is willful and ongoing, entitling Hydrafacial to treble the amount of its damages and profits, and to an award of attorneys' fees under 15 U.S.C. § 1117(a). By its actions, La Peau has irreparably injured Hydrafacial. Such irreparable injury will continue unless and until La Peau is preliminarily and permanently enjoined by this Court from further violation of Hydrafacial's rights, for which Hydrafacial has no adequate remedy at law.

44. Hydrafacial is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

## THIRD CLAIM

## CALIFORNIA TRADEMARK INFRINGEMENT

**(Cal. Bus. & Prof. Code §§ 14200 *et seq*.)**

45. Hydrafacial realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 28 of this Complaint.

46. Hydrafacial owns common law rights in its HYDRAFACIAL Marks, which are uniquely associated with Hydrafacial as the source of the products and services offered in connection with the HYDRAFACIAL Marks.

47. The HYDRAFACIAL Marks are inherently distinctive and have additionally acquired distinctiveness by virtue of Hydrafacial's widespread use of and investment herein.

48.     La Peau uses La Peau's Unauthorized Hydrafacial Designation, which are identical to the HYDRAFACIAL Marks, in connection with offering services identical to those provided by Hydrafacial, without consent or authorization.

49.     La Peau's willful infringement of the HYDRAFACIAL Marks is likely to cause, contribute to, or induce others to cause consumer confusion about the source of La Peau's services and/or products, or about a relationship between La Peau and Hydrafacial, in violation of California Business & Professions Code § 14200 *et seq.*

50.     La Peau infringed the HYDRAFACIAL Marks with knowledge and intent to cause confusion, mistake, or deception.

51.     La Peau's conduct is aggravated by the kind of willfulness, wantonness, malice, and conscious indifference to the rights and welfare of Hydrafacial for which California law allows the imposition of exemplary damages, in addition to recovery of Hydrafacial's significant compensatory damages.

52.     Pursuant to California Business & Professions Code § 14200 *et seq.*, Hydrafacial is entitled to injunctive relief and damages in the amount of three times La Peau's profits and all damages suffered by Hydrafacial by reason of La Peau's use, display, and sale of infringing goods and services.

<u>**FOURTH CLAIM**</u>

<u>**CALIFORNIA UNFAIR COMPETITION**</u>

**(Cal. Bus. & Prof. Code § 17200)**

53.     Hydrafacial realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 28 of this Complaint.

54.     Hydrafacial owns common law rights in its HYDRAFACIAL Marks, which are uniquely associated with Hydrafacial as the source of the products and services offered in connection with the HYDRAFACIAL Marks.

55.     The HYDRAFACIAL Marks are inherently distinctive and have additionally acquired distinctiveness by virtue of Hydrafacial's widespread use of and investment herein.

56.     La Peau's conduct, as described in this Complaint, including its trademark

COMPLAINT                                                                                                    - 10 -
Case No.

infringement and false designation of origin, constitutes "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising" within the meaning of California Business & Professions Code Section 17200.

57.     La Peau's acts, as described in this Complaint, have injured and damaged Hydrafacial.

58.     Hydrafacial is informed and believes, and thereon alleges, that La Peau has derived and received gains, profits, and advantages from its unfair competition in an amount that is not currently known to Hydrafacial. Moreover, La Peau's actions have damaged Hydrafacial in an amount to be determined at trial.

59.      Hydrafacial is informed and believes, and thereon alleges, that La Peau undertook the acts alleged above willfully, for the purpose of enriching itself to Hydrafacial's detriment.

60.     By its actions, La Pau has irreparably injured Hydrafacial.  Such irreparable injury will continue unless and until La Peau is preliminarily and permanently enjoined by this Court from further violation of Hydrafacial's rights, for which Hydrafacial has no adequate remedy at law.

61.     As a consequence of La Peau's actions, Hydrafacial is entitled to injunctive relief preventing the conduct alleged in this Complaint.

## **PRAYER FOR JUDGMENT**

WHEREFORE, Hydrafacial prays that this Court grant it the following relief:

1.     Adjudge that the HYDRAFACIAL Marks have been infringed by La Peau in violation of Hydrafacial's rights under common law, 15 U.S.C. § 1114, Cal. Bus. & Prof. Code §§ 14200 *et seq.*, and/or California law;

2.     Adjudge that La Peau has competed unfairly with Hydrafacial in violation of Hydrafacial's rights under, 15 U.S.C. § 1125(a), Cal. Bus. & Prof. Code § 17200, and/or California law;

3.     Adjudge that La Peau and its agents, employees, attorneys, successors, assigns, affiliates, and joint venturers and any person(s) in active concert or participation with it, and/or any person(s) acting for, with, by, through or under it, be enjoined and restrained at first during the pendency of this action and thereafter permanently from:

a.     Manufacturing, producing, sourcing, importing, exporting, selling,

COMPLAINT                                                                                                          - 11 -
Case No.

buying, offering for sale, distributing, licensing, advertising, or promoting any goods or services, using any words, symbols or designs that so resemble the HYDRAFACIAL Marks as to be likely to cause confusion, mistake or deception, on or in connection with any product or service that is not authorized by or for Hydrafacial;

b. Using any word, term, name, symbol, device, or combination thereof that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of La Peau or its goods and services with Hydrafacial or Hydrafacial's goods and services, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

c. Claiming trademark rights in Hydrafacial, or any other word, symbol, or design that is confusingly similar to the HYDRAFACIAL Marks, including by applying now or in the future for federal registration of trademarks comprising of "Hydrafacial," or any other word, symbol, or design that is similar to the HYDRAFACIAL Marks;

d. Further infringing the rights of Hydrafacial in and to any of its trademarks or otherwise damaging Hydrafacial's goodwill or business reputation;

e. Otherwise competing unfairly with Hydrafacial in any manner; and

f. Continuing to perform in any manner whatsoever any of the other acts described in this Complaint.

4. Adjudge that La Peau, within thirty (30) days after service of the judgment demanded herein, be required to file with this Court and serve upon Hydrafacial's counsel a written report under oath setting forth in detail how it has complied with the judgment;

5. Adjudge that Hydrafacial recover from La Peau its damages and lost profits, plus La Peau's profits, in an amount to be proven at trial, as well as punitive damages, exemplary damages, and compensatory damages under federal and California law;

COMPLAINT                                                                                                    - 12 -
Case No.

6.      Adjudge that La Peau be required to account for any profits that are attributable to its illegal acts, and that Hydrafacial be awarded from La Peau (1) La Peau's profits and (2) all damages sustained by Hydrafacial, under 15 U.S.C. § 1117, plus prejudgment interest;

7.      Adjudge that the amounts awarded to Hydrafacial pursuant to 15 U.S.C. § 1117 shall be trebled;

8.      Order an accounting of and impose a constructive trust on all of La Peau's funds and assets that arise out of its infringing activities;

9.      Adjudge that Hydrafacial be awarded its costs and disbursements incurred in connection with this action, including Hydrafacial's reasonable attorneys' fees and investigative expenses; and

10.      Adjudge that all such other relief be awarded to Hydrafacial as this Court deems just and proper.

Dated: August 10, 2026                          Respectfully submitted,

VERSO LAW GROUP LLP


By: */s/ Sophy Tabandeh*
Sophy Tabandeh

Attorney for Plaintiff
HYDRAFACIAL LLC

## DEMAND FOR JURY TRIAL

Hydrafacial LLC demands that this action be tried to a jury.

Dated: August 10, 2026                    Respectfully submitted,

                                          VERSO LAW GROUP LLP


                                          By: */s/ Sophy Tabandeh*
                                          Sophy Tabandeh


                                          Attorney for Plaintiff
                                          HYDRAFACIAL LLC

COMPLAINT                                                                   - 14 -
Case No.